UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DALE A. KENNETT                                          CIVIL ACTION

VERSUS                                                   NO. 16-14765

USAA GENERAL INDEMNITY CO., *et al.*                     SECTION: M (2)

## ORDER & REASONS

Before the Court is plaintiff Dale A. Kennett's renewed motion for judgment as a matter of law, or, alternatively, for a new trial,[1] to which defendant USAA General Indemnity Company ("USAA") responds in opposition,[2] and in further support of which Kennett replies.[3] Having considered the parties' memoranda and the applicable law, the Court issues this Order & Reasons.

**I.      BACKGROUND**

This case arises from a dispute about insurance coverage. Kennett held a homeowner's insurance policy issued by USAA for property located at 705 Virginia Avenue in Bogalusa, Louisiana. The policy provides, *inter alia*, $590,000 in dwelling coverage, $88,500 in other structures coverage, $442,500 in personal property coverage, and an unlimited amount for up to twelve months of loss of use.[4] Under "Section I – Property We Cover," the policy delineates "Coverage A – Dwelling Protection" in pertinent part as follows:

> We cover:
>
> 1.      The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling; ….[5]

---

[1] R. Doc. 148.
[2] R. Doc. 152.
[3] R. Doc. 163.
[4] Exh. 3 at 4; R. Doc. 110 at 1.
[5] Exh. 3 at 9.

1

The policy defines "residence premises" to mean:

1. The one family dwelling, other structures, and grounds; or

2. That part of any other building;

Where you reside and which is shown as the "residence premises" in the Declarations.

"Residence premises" also means a two, family dwelling where you reside in at least one of the family units and which is shown as the "residence premises" in the Declarations."[6]

The policy provides "total loss" dwelling coverage "[i]n the event that your dwelling is completely destroyed solely by Fire or Windstorm to the extent that it has lost its identity and specific character as a building."[7]

The policy does not provide coverage "for damage consisting of or caused directly or indirectly by any of the following":

d. Vandalism and malicious mischief … and any ensuing loss caused by any intentional and wrongful act committed in the course of the vandalism or malicious mischief, if the dwelling has been vacant for more than 180 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant; ….[8]

On March 28, 2016, the premises located at 705 Virginia Avenue was damaged by fire allegedly caused by arson.[9] The policy was then in effect. USAA rejected Kennett's claim related to the loss.[10] Kennett sued USAA, claiming that USAA wrongfully denied coverage for the total loss of his property.[11] The Court held a jury trial on February 4-6, 2019. At the close of all the evidence, the Court denied Kennett's motions for judgment as a matter of law. After a few hours

---

[6] *Id.*
[7] *Id.* at 51.
[8] *Id.* at 21-22.
[9] While the parties stipulate that the covered property was "703/705 Virginia Avenue," *see* R. Doc. 110, the declarations page of the policy lists only 705 Virginia Avenue as the "residence premises." Exh. 3 at 4.
[10] R. Docs. 110 & 115 at 7-8.
[11] *See* R. Doc. 1.

of deliberation, the jury of seven returned a verdict in favor of USAA, finding that the property at 705 Virginia Avenue was not Kennett's "residence premises" at the time of the fire,[12] and so was not covered by USAA's policy.

## II. PENDING MOTIONS

Kennett has renewed his motions for judgment as a matter of law on four issues: (1) that the policy was ambiguous with regard to property covered under dwelling protection; (2) that there was no evidentiary basis for the jury to find that he did not "reside" at the premises; (3) that, while not reached by the jury, there was no evidentiary basis for the jury to find that the property was vacant for 180 days; and (4) that, while also not reached by the jury, there was no evidentiary basis for the jury to find that the damage did not constitute a "total loss." In the event his renewed motion for judgment as a matter of law is denied, Kennett alternatively moves for a new trial.[13]

In opposition, USAA contends that Kennett waived his right to argue ambiguity in the policy because he did not assert that ground at trial. USAA also contends that sufficient evidence supports a reasonable jury's finding that Kennett did not reside at the premises. USAA further contends that, had the jury reached the issues, sufficient evidence was presented to support findings that the premises was vacant for 180 days prior to the fire and that the damage was not a total loss.[14]

## III. LAW & ANALYSIS

### A. Judgment as a Matter of Law

Rule 50 of the Federal Rules of Civil Procedure requires a party to "specify the judgment

---

[12] R. Doc. 144. On the verdict form, the jury was asked, "Do you find by a preponderance of the evidence that the damaged structure was Dale Kennett's residence premises at the time of the fire?," and the jury answered, "No."
[13] R. Doc. 148.
[14] R. Doc. 152.

sought and the law and facts that entitle the movant to the judgment" upon motion at trial before the jury renders its verdict. Fed. R. Civ. P. 50(a)(2); *Puga v. RCX Sols., Inc.*, 922 F.3d 285, 290 (5th Cir. 2019). "If the pre-verdict motion is denied, then the party can renew its motion under Rule 50(b). But the renewed Rule 50(b) is 'technically only a renewal of the [Rule 50(a) motion for judgment as a matter of law].'" *Id.* (quoting *Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 172 (5th Cir. 1985)) (bracketed language in original). As a consequence, "[i]f a party fails to move for judgment as a matter of law under Federal Rule of Civil Procedure 50(a) on an issue at the conclusion of all of the evidence, that party waives both its right to file a renewed post-verdict Rule 50(b) motion and also its right to challenge the sufficiency of the evidence on that issue on appeal." *Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 238 (5th Cir. 2001); *see also In re Isbell Records, Inc.*, 774 F.3d 859, 867 (5th Cir. 2014) ("By not raising this argument at trial or in its Rule 50(a) motion, [the appellant] has waived its right to bring a Rule 50(b) motion on this ground."). The Rule 50(b) waiver is "designed to prevent a litigant from ambushing both the district court and opposing counsel after trial." *Puga*, 922 F.3d at 290-91 (citing *Quinn v. Sw. Wood Prods., Inc.*, 597 F.2d 1018, 1025 (5th Cir. 1979) ("When a claimed deficiency in the evidence is called to the attention of the trial judge and of counsel before the jury has commenced deliberations, counsel still may do whatever can be done to mend his case. But if the court and counsel learn of such a claim for the first time after verdict, both are ambushed and nothing can be done except by way of a complete new trial. It is contrary to the spirit of our procedures to permit counsel to be sandbagged by such tactics or the trial court to be so put in error.")) (other citation omitted).

Judgment as a matter of law under Rule 50 is warranted only where "the facts and inferences point so strongly and overwhelmingly in favor of one party that the court concludes

reasonable jurors could not arrive at a contrary verdict." *Arsement v. Spinnaker Expl. Co.*, 400 F.3d 238, 248-49 (5th Cir. 2005) (quoting *Bellows v. Amoco Oil Co.*, 118 F.3d 268, 273 (5th Cir. 1997)) (citing Fed. R. Civ. P. 50(a)). Stated differently, "[a] jury verdict must be upheld unless there is no legally sufficient evidentiary basis for a reasonable jury to find as the jury did." *Heck v. Triche*, 775 F.3d 265, 273 (5th Cir. 2014) (quoting *Foradori v. Harris*, 523 F.3d 477, 485 (5th Cir. 2008)). Thus, to prevail on a Rule 50 motion, "the party opposing the motion must at least establish a conflict in substantial evidence on each essential element of [its] claim." *N. Cypress Med. Ctr. Operating Co. v. Aetna Life Ins. Co.*, 898 F.3d 461, 473 (5th Cir. 2018) (quoting *Goodner v. Hyundai Motor Co., Ltd.*, 650 F.3d 1034, 1039 (5th Cir. 2011)). "'Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Conn. Gen. Life Ins. Co. v. Humble Surgical Hosp., L.L.C.*, 878 F.3d 478, 485 (5th Cir. 2017)).

"[W]hen evaluating the sufficiency of the evidence, [courts] view all evidence and draw all reasonable inferences in the light most favorable to the verdict." *Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471, 475 (5th Cir. 2005). However, "credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts" remain within the province of the jury. *Kelso v. Butler*, 899 F.3d 420, 425 (5th Cir. 2018) (quoting *Hurst v. Lee Cty.*, 764 F.3d 480, 483 (5th Cir. 2014)).

### B. Motion for a New Trial

Rule 59(a) provides a district court discretion to grant a new trial "on all or some of the issues … after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a); *see also Eiland v. Westinghouse Elec. Corp.*, 58 F.3d 176, 183 (5th Cir. 1995) ("the decision to grant or deny a motion for new trial … rests in

the sound discretion of the trial judge"). While the rule does not specify the grounds necessary for granting a new trial, the Fifth Circuit has instructed that "[a] new trial may be granted, for example, if the district court finds the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course." *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985) (citations omitted). A district court may also grant a new trial when the jury's verdict is logically inconsistent if, after viewing the evidence in the light most favorable to a finding of consistency, reconciliation is impossible. *See Ellis v. Weasler Eng'g Inc.*, 258 F.3d 326, 343 (5th Cir. 2001); *Willard v. The John Hayward*, 577 F.2d 1009, 1011 (5th Cir. 1978) ("Answers should be considered inconsistent, however, only if there is no way to reconcile them.").

When a movant argues that insufficient evidence supports the verdict, the district court should deny the motion "unless the verdict is against the great weight of the evidence." *Pryor v. Trane Co.*, 138 F.3d 1024, 1026 (5th Cir. 1998) (quoting *Dotson v. Clark Equip. Co.*, 805 F.2d 1225, 1227 (5th Cir. 1986)); *see also Shows v. Jamison Bedding, Inc.*, 671 F.2d 927, 930 (5th Cir. 1982) ("new trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great – not merely the greater – weight of the evidence") (quotation omitted). In contrast to the standard applicable to a Rule 50 motion, "[a] verdict can be against the 'great weight of the evidence,' and thus justify a new trial, even if there is substantial evidence to support it," and a district court may weigh the evidence when resolving whether a new trial should be granted on this ground. *Shows*, 671 F.2d at 930.

### C. Analysis

When discussing each issue raised in his motion, Kennett does not make a distinction between the grounds warranting judgment as a matter of law as distinct from a new trial, but

generally contends that the same arguments he advances for granting a judgment as a matter of law apply with greater force to support granting a new trial. Accordingly, where necessary, the Court applies each of these respective standards following a discussion of the parties' contentions directed to the issues raised by Kennett in his renewed motion for judgment as a matter of law, or, alternatively, for new trial.

1. **Ambiguous Policy Terms**

Kennett argues that the policy terms defining dwelling coverage on the "residence premises" are ambiguous.[15] He contends on the one hand that the policy identified the "residence premises" as the property whose physical street address is listed on the declarations page, and on the other hand that the policy defines "residence premises" to be the property listed on the declarations page ***and*** where the insured resides.[16] Kennett characterizes these provisions as conflicting and, as a consequence, the policy as ambiguous as to the meaning of the term "residence premises." USAA responds that Kennett failed to assert this argument as a basis for his Rule 50(a) motions brought at trial, thus precluding him from raising any issue of ambiguity in a Rule 50(b) motion post-trial.[17] Regardless, USAA maintains that the policy terms are not ambiguous because they are not susceptible to two or more reasonable interpretations, and as a result, the rule of construction that any ambiguity in an insurance policy be read against the insurer does not apply. USAA contends that the absence of a definition for the word "reside" does not render the policy ambiguous but instead, pursuant to Louisiana's well-established framework for interpreting insurance policies, calls for construing the word using its plain and ordinary meaning.[18] In reply, Kennett insists that he did preserve the ambiguity argument, citing a discrete portion of his

---

[15] R. Doc. 148-1 at 9.
[16] *Id.*
[17] R. Doc. 152 at 3.
[18] *Id.* at 6.

7

counsel's Rule 50 argument at trial where he stated that "the plain meaning of the words ['residence premises'] taken in the context that coverage, if there is any doubt, has to be resolved in the favor of the insured."[19]

The Court is doubtful that there is any ambiguity in the policy as to the meaning of the term "residence premises,"[20] but the Court need not reach this issue because Kennett failed to assert any such an argument in his Rule 50 motions at trial. Rather, in his Rule 50 motions at trial, Kennett argued that the word "residence," which he says was defined in the jury instructions as "the place that someone dwells permanently or for a considerable time," would nonetheless permit an inhabitant to take "brief absences or times away from a house" without compromising his "residence" status for purposes of the policy.[21] Kennett's counsel made specific reference to *Korbel v. Lexington Insurance Co.*, 308 F. App'x 800, 805 (5th Cir. 2009), indicating that the case was the source of the definition used in the jury instructions. In the balance of his Rule 50 argument at trial, Kennett's counsel urged that the evidence established that 705 Virginia Avenue was Kennett's "residence premises" according to the law related in the jury instructions; and that

---

[19] R. Doc. 163 at 3 (citing R. Doc. 163-1 at 5).

[20] There is no conflict in the policy's listing on the declarations page the physical address of the property said to be the "residence premises," while simultaneously requiring that the listed physical address be where the insured resides to trigger coverage. To be sure, such a requirement is reasonable if the adjective "residence" is to have any relevant meaning under the policy. Otherwise, a policyholder could list any address as the "residence premises" without regard to either the plain meaning of the adjective "residence" or the separate, but corroborating policy requirement that the "residence premises" be "where you reside." Under Louisiana law, an insurance policy "should not be interpreted in an unreasonable or strained manner under the guise of contractual interpretation to enlarge or to restrict its provisions beyond what is reasonably contemplated by unambiguous terms or achieve an absurd conclusion." *Cadwallader v. Allstate Ins. Co.*, 848 So. 2d 577, 580 (La. 2003) (citations omitted). A court cannot exercise "inventive powers to create an ambiguity where none exists or the making of a new contract when the terms express with sufficient clearness the parties' intent." *Id.* (citations omitted). Thus, clear and unambiguous policy wording that expresses the parties' intent is enforced as written. *Id.* In short, the policy's coverage and definition clauses unambiguously require that the address listed on the declarations page be the place where the insured resides. Indeed, another section of this court, when confronted with identical policy provisions, held that "[t]he 'residence premises' requirement is unambiguous and creates coverage only for loss to a dwelling used by the Plaintiff as his primary residence." *Keelen v. Metro. Prop. & Cas. Ins. Co.*, 2012 WL 1933747, at *6 (E.D. La. May 29, 2012).

[21] R. Doc. 163 at 2-3 (citing R. Doc. 163-1 at 2-3). In fact, the jury instructions recited the plain and ordinary meaning for the term "reside" (namely, "to dwell permanently or for a considerable time, to have one's settled or usual abode, to live in or at a particular place"), not the term "residence," as Kennett misstates.

*Korbel* (which had held that the property there at issue was not the insured's residence premises because he never established the intent to make it his residence premises) was distinguishable because it was not disputed that Kennett had at one point actually resided at 705 Virginia Avenue. In so arguing, Kennett's counsel acknowledged that *Korbel* "is the only case on record addressing this issue,"[22] because other decisions involving homeowner policies all dealt with the entirely different question "whether an insured was a member of a household of the residence premises"[23] – a question of relation to the insured or the insured's household, not as here, relation to the premises.

Bottom line, nowhere in his pre-verdict Rule 50 motions did Kennett's counsel argue that the USAA policy was ambiguous in its use of the term "residence premises." To preserve this argument, it was not enough for Kennett's counsel to intone the canon of construction that "any doubt has to be resolved in the favor of the insured,"[24] without making some effort to identify in what way Kennett believed the policy wording was doubtful. To conclude otherwise would subject USAA's counsel and this Court to the surprise and ambush the waiver rule is there to guard against. *Puga*, 922 F.3d at 290-91. Kennett made no objection at trial to the jury instructions addressing the issue of "residence premises" and defining the term "reside."[25] Nor did Kennett make any pretrial filing, or argument at trial, either addressing the issue of ambiguity he now raises in his post-verdict Rule 50 motion or invoking the cases he now cites in that motion. By failing to make a pre-verdict Rule 50 motion raising the issue of ambiguity in the policy's use of the term "residence premises," Kennett waived his right to do so post-verdict. *Id.* at 290; *Isbell Records*, 774 F.3d at 867.

---

[22] R. Doc. 163 at 3 (quoting R. Doc. 163-1 at 4).
[23] *Id*.
[24] *Id*. (quoting R. Doc. 163-1 at 5).
[25] R. Doc. 128.

## 2. The Evidence of Kennett's Residence

Kennett next contends that insufficient evidence was developed to support the jury's finding that he did not reside at 705 Virginia Avenue at the time of the fire. Kennett argues that the evidence adduced at trial could at most demonstrate that he took temporary leaves of absence from the premises as a consequence of his tumultuous divorce and his imprisonment, but that he always intended to retain the premises as his primary residence, as evidenced by his unchanged driver's license that listed 705 Virginia Avenue as his residence, his ownership of the property following the divorce proceedings, his renovations to the property, and the property not being foreclosed.[26] Kennett also adds that "it was USAA's burden by a preponderance of the evidence, and not Kennett's to prove that coverage was excluded," as if the dwelling protection clauses were exclusionary.[27]

USAA responds that sufficient evidence existed to support the jury's verdict that Kennett did not reside at 705 Virginia Avenue. USAA points to Kennett's testimony at trial that he had moved into a friend's home in Mississippi in August 2015, where he helped to pay the bills. Kennett also testified that he was imprisoned between October 13, 2015, and February 23, 2016; that there was no water service at 705 Virginia Avenue when he was released from prison; and that water service was not reactivated at any time between his release and the time of the fire. While USAA contends this evidence alone would be sufficient for a reasonable jury to conclude that Kennett did not reside at the property at the time of the fire, USAA notes that Kennett's lessee and property manager, Albert Jones, also testified that he was "one hundred percent certain" that no one lived at 705 Virginia Avenue between the time he began renting property from Kennett around September 2015 and the date of the fire, which USAA says demonstrates the clear weight

---

[26] R. Doc. 148-1 at 19.
[27] *Id.* at 20.

10

of the evidence against Kennett.[28]

Kennett misapprehends the burden of proof on this issue. Contrary to Kennett's assertion that USAA bears the burden of proof to show that coverage was excluded, Louisiana law is clear that the insured has the burden to first prove that the claim asserted is covered by the policy. *Dickerson v. Lexington Ins. Co.*, 556 F.3d 290, 295 (5th Cir. 2009) (citing *Jones v. Estate of Santiago*, 870 So. 2d 1002, 1010 (La. 2004)). If the insured meets this burden, the burden shifts to the insurer to prove that the damage is excluded. *Id.*; *see also Sensebe v. Canal Indem. Co.*, 35 So. 3d 1122, 1125 (La. App. 2010) ("An insurer has the burden of proving that a loss falls within a policy exclusion.") (citation omitted). "Nonetheless, an insurance policy, including its exclusions, should not be interpreted in an unreasonable or strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion." *Sensebe*, 35 So. 3d at 1125 (citing *N. Am. Treatment Sys., Inc. v. Scottsdale Ins. Co.*, 943 So. 2d 429, 443 (La. App. 2006)).

The provision at issue here establishes the scope of coverage; it is not exclusionary. *Cf. id.* (exclusionary clause stated that coverage "does not apply" to previously established coverage). Therefore, Kennett has the burden of proving that his claim is covered by the terms of the policy. The policy provided coverage of the "residence premises," defined in part as where the insured resides.[29] The Court instructed the jury that the word "reside," not having a technical definition in the policy, generally meant "to dwell permanently or for a considerable time, to have one's settled or usual abode, to live in or at a particular place." *See Korbel*, 308 F. App'x at 805 (quoting THE OXFORD ENGLISH DICTIONARY (2d ed. 1989)).

At trial, ample evidence indicated that Kennett did not reside at 705 Virginia Avenue at the

---

[28] R. Docs. 152 at 7-9; 160 at 131.
[29] Exh. 3 at 7.

11

time of the fire. Kennett testified that he had been living in Mississippi in August 2015, before Kennett was imprisoned in October 2015. Jones, who acted as Kennett's property manager for other of Kennett's Bogalusa properties, testified that he was "one hundred percent certain" no one was living at 705 Virginia Avenue after Jones began renting a neighboring property from Kennett around September 2015.[30] And Kennett testified that water utilities had not been supplied to 705 Virginia Avenue between the time of his release from prison on February 23, 2016, and the time of the fire on March 28, 2016. In addition, Christian Mulkey, USAA's fire-origin-and-cause expert, testified that he did not believe anyone had been living at 705 Virginia Avenue because the contents of the premises showed no signs of residency: on the left side of the house, he observed construction materials, and on the right side, bare contents, where the furniture in the sole room containing such had empty drawers.[31] Viewing the totality of the evidence in the light most favorable to the verdict, it is clear that Kennett has not demonstrated an insufficient evidentiary basis to uphold the jury's verdict. Thus, Kennett's renewed motion for judgment as a matter of law must be denied. It is also clear to the Court that the verdict is not against the great weight of the evidence, and Kennett's motion for a new trial must be denied.

### 3. 180-day Vacancy

Kennett next argues that USAA failed to meet its burden of proving that the exclusionary clause relating to damage resulting from vandalism or mischief would have applied because USAA did not prove that the property was vacant for 180 consecutive days. Kennett points to his testimony that he had spent time at the property in the 180-day period prior to the fire, Jeff Berger's testimony that Kennett had informed Berger that he had stayed in the property weeks prior to the fire, and an order from Kennett's divorce proceedings directing him to remove his ex-wife's

---

[30] R. Doc. 160 at 130-31.
[31] R. Doc. 161 at 222-27.

belongings from the property as corroborating his and Maxie Castilow's testimony that he had been doing so.[32]

While USAA responds to the substance of this argument,[33] there is no need to address it because the jury never had need to consider it at trial. Having found that 705 Virginia Avenue was not Kennett's residence premises, the jury effectively determined that there was no coverage under the USAA policy. Hence, the jury signed and dated its verdict without ever reaching or having to reach the question whether the property was vacant for 180 days. And it is unnecessary for the Court to do so now.

   4. **Total Loss**

Finally, Kennett argues that he proved the damage was a total loss because USAA failed to rebut the expert testimony of Rick Clarke, Kennett's expert in construction estimating and expert estimator, adjuster, and appraiser of property damage claims.[34] Clarke concluded that the property was a total loss based on his inspection and the condemnation of the property by the City of Bogalusa. Kennett notes that USAA's own expert adjuster, Berger, admitted that he did not adjust the loss, and so contends that USAA presented no countervailing evidence.[35] Again, while USAA responds to the substance of Kennett's argument,[36] there is no need to address it because the jury never had need to consider it, and did not consider it, at trial.

---

[32] R. Doc. 148-1 at 21.
[33] USAA responds that it presented evidence of a 180-day consecutive period of vacancy prior to the fire, including Jones' testimony that he was certain no one had lived at 705 Virginia Avenue between September 2015 and the fire on March 28, 2016; Kennett's testimony that he was imprisoned from October 13, 2015, until February 23, 2016, for 133 days; and Kennett's testimony that no water utilities operated on the premises between his release from prison and the fire one month later. R. Doc. 152 at 9. USAA calculates that Jones' testimony, together with the evidence of Kennett's imprisonment and lack of water service, forms a reasonable foundation for a jury to conclude that the property had been vacant for "[a]s many as 206 days." R. Doc. 152 at 9.
[34] R. Doc. 161 at 74.
[35] R. Doc. 148-1 at 21.
[36] R. Doc. 152 at 10.

## IV. CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Kennett's motion for judgment as a matter of law, or, alternatively, for new trial (R. Doc. 148), is DENIED.

New Orleans, Louisiana, this 15th day of July, 2019.

                                                  BARRY W. ASHE
                                                  UNITED STATES DISTRICT JUDGE